IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BANK OF DIXON COUNTY <br> By its agent Leasing Innovations, Inc. <br><br> Plaintiff <br><br> v. <br><br> DONNA L. MALONE <br> and <br> MARK W. ANSTETT <br><br> Defendants. | Case No. 09 CV 06871 <br><br> Judge John Darrah |

## PLAINTIFF'S MOTION FOR PRE-JUDGMENT WRIT OF ATTACHMENT

Bank of Dixon County, by its agent Leasing Innovations, Inc. ("Plaintiff"), requests that this Court grant to the Plaintiff a Writ of Attachment against the Defendants both of goods, effects, and credits by Trustee Process, and of interests in real estate, all pursuant to Chapter 735 of the Illinois Code of Civil Procedure, §4-101 *et seq.*, as incorporated by F.R.Civ.P.64. In support hereof, Plaintiff states as follows:[1]

## SUMMARY

Plaintiff is owed $321,596.80 for credit extended to Equipment Acquisition Resources, Inc. ("E.A.R."), a corporation based in Chicago, and guaranteed by the Defendants. The Defendants induced the Plaintiff to extend credit by making false representations which were in writing and signed by Defendants.

The Defendant Malone owned 90% of E.A.R., and the Defendant Anstett owned the remaining 10%. The Defendants were the chief executive officer and president of E.A.R., respectively. Leasing Innovations, Inc. ("Leasing Innovations") required the

---

[1] By this reference, Plaintiff incorporates herein the allegations of its Complaint and the exhibits attached to the Complaint. The instant motion is further supported by the sworn allegations contained in the affidavit attached hereto as Exhibit A and incorporated herein by this reference.

Defendants to provide financial statements, as a prerequisite to its extension of credit to E.A.R. To induce Leasing Innovations to extend the requested credit to E.A.R., Malone produced a financial statement showing that the value of her holdings in E.A.R. was $180 million and Anstett produced a financial statement showing that the value of his holdings was almost $16 million. Neither Defendant disclosed that anything was wrong with the finances of E.A.R. and Defendants in fact concealed the truth about the financial condition of E.A.R.

The Defendants guaranteed the indebtedness of E.A.R. on May 26, 2009. At the time that the Plaintiff and its predecessor extended credit to E.A.R., and at the time that the Plaintiff and Leasing Innovations relied on the guarantees of the Defendants, both Defendants knew that E.A.R. would be unable to repay the indebtedness. The Defendants' false representations were a scheme or artifice designed to defraud Leasing Innovations.

Less than four months after the Defendants provided their guaranties, E.A.R. confessed to its creditors in writing that it had been in financial distress since at least 2008, and was unable to pay its debts as they became due. Also in less than four months after the Defendants provided their guaranties, E.A.R. had stopped paying, leaving the Plaintiff with no prospect of collecting 31 months of payments. On October 23, 2009, E.A.R. filed a petition for relief under the Bankruptcy Code.

According to its recent bankruptcy filings, E.A.R. was aware of financial problems as early as 2008. The Defendants never disclosed these difficulties to Leasing Innovations or the Plaintiff. As set forth in the Complaint, the Defendants fraudulently entered induced Leasing Innovations and the Plaintiff to extend credit to E.A.R.

Leasing Innovations subsequently assigned the rights in the indebtedness to the Plaintiff. Leasing Innovations is the agent for the Plaintiff in the collection process.

6500721v1 906005 72055

## DISCUSSION

1. The Complaint unequivocally establishes simple facts: E.A.R. owes the Plaintiff for credit extended in the amount of $321,596.80, and has simply failed to pay.

2. The Defendants guaranteed the debt of E.A.R. Within four months of the execution of the guarantee, the underlying debt, and hence the guarantee, was in default.

3. On October 23, 2009, E.A.R. filed a petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Northern District of Illinois, Case 09-39937 (the "E.A.R. Bankruptcy proceedings"). The filing of the Bankruptcy petition was an event of default.

4. The failure to make any monthly payments on September 1, 2009 was an event of default.

5. The admission in writing by E.A.R. to its creditors that it was unable to pay its debt as they became due was an event of default.

6. Based upon the foregoing, there is a reasonable likelihood that the Plaintiff will recover judgment, including interests and costs in an amount equal to or greater than $321,596.80.

7. The initial pleadings filed in the Bankruptcy case of E.A.R. indicate indebtedness between $100,000,000 and $500,000,000, and assets with a value between $50,000,000 and $100,000,000.

8. In connection with her guarantee, the Defendant Malone presented a financial statement to the Plaintiff, dated January 1, 2009, in which she listed $180,000,000 as the value of her shares in E.A.R.

6500721v1 906005 72055

9. In connection with his guarantee, the Defendant Anstett presented a financial statement to the Plaintiff, dated January 22, 2009, in which he listed $15,392,981 as the value of his shares in E.A.R.

10. Now that E.A.R. is the subject of Bankruptcy proceedings, it is probable that the stock has no, or little, value.

11. Malone and Anstett were instrumental in the operations of E.A.R., serving as chief executive officer and president, respectively, and in the case of Malone, landlord.

12. Both Malone and Anstett knowingly signed guaranties on the eve of the collapse of E.A.R.

13. The creditors of E.A.R. are mostly equipment lessors. Equipment lessors purchase equipment from third parties "to order" for individual lessees, and recoup their costs by means of the rent paid by lessees. Based on recent conversations among equipment lessors, suspicions have arisen that a) almost all the entities which leased equipment to E.A.R. received inflated values of the equipment, thereby inducing them to advance excessive amounts of money to parties involved in the sale of the equipment to the lessors, and b) equipment may have been "round-tripped", which is business jargon for arranging for the same equipment to have been improperly sold simultaneously to multiple lessors. As a result, the Plaintiff and Leasing Innovations were induced to advance funds to purchase equipment in an amount far greater than the equipment was worth.

14. Pursuant to 735 ILCS 5/4-101(9), a creditor having a money claim, whether liquidated or unliquidated, may attach the property of its debtor where "the debt

sued for was fraudulently contracted on the part of the debtor," provided that the statements of the debtor which constitute the fraud are in writing and signed by the debtor or the debtor's agent or attorney.

15. Malone and Anstett have already been involved in obtaining credit from the Plaintiff at a time when they knew that E.A.R. would be unable to honor its obligations.

16. In a recent pleading filed in the E.A.R. Bankruptcy proceedings, the Debtor confessed that its financial strength has been doubtful since at least 2008. Specifically, in the "Debtor's Application for Entry of an Interim Order Authorizing Retention and Employment of Development Specialists, Inc. as Financial Advisor to the Debtor", filed on October 23, 2009, the Debtor stated as follows:

> "9. Beginning in the fourth quarter of 2008, the Debtor experienced a significant downturn in equipment sales. The downturn continued into 2009 precipitating a severe liquidity crisis and ultimately leading to this filing."

17. Neither Malone nor Anstett ever disclosed to the Plaintiff the doubtful state of the financial affairs of E.A.R., and instead induced the Plaintiff to extend credit, and to rely on an inflated value of their stockholdings in E.A.R.

18. Malone's assets include interests in real estate in, *inter alia,* Jackson Hole, Wyoming; Chicago, Illinois; and Florida. Some of her interests in real estate are owned outright by her, and other interests are held by virtue of her membership, partnership, or shareholdings in corporate entities.

19. Anstett's assets include a residence in Lake Forest, Illinois.

20. The issuance of pre-judgment relief will preserve the status quo of the

6500721v1 906005 72055

Debtors' assets, and prevent any further efforts to mislead or alter the ownership of their assets pending the outcome of this litigation.

## CONCLUSION

WHEREFORE THE PLAINTIFF PRAYS that this Court

1. Issue a writ of attachment by trustee process for goods, effects or credits of each defendant entrusted to and deposited in the hands of any bank located in Illinois in the amount of $321,596.80.

2. Issue a writ of attachment in the amount of $321,596.80 for all of the interests of Malone in real estate located within Illinois.

3. Issue a writ of attachment in the amount of $321,596.80 for all of the real estate interests of Anstett located within Illinois.

**BANK OF DIXON COUNTY**
By its agent Leasing Innovations, Inc.

By: */s/ Adam L. Saper*
Attorney of Plaintiff

Adam L. Saper, Esq.
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, # 300
Chicago, Illinois 60601
(312) 704-3000.Office
(312) 704-3001.Fax
asaper@hinshawlaw.com

 6500721v1 906005 72055

STATE OF ILLINOIS      )
                       )
COUNTY OF COOK         )

## CERTIFICATE OF SERVICE (ECF)

I, the undersigned counsel, state that I filed the above and foregoing **Plaintiff's Motion For Pre-Judgment Writ Of Attachment** (Bank of Dixon County v. Donna Malone and Mark Anstett) via the United States District Court for the Northern District of Illinois' Electronic Case Filing system (ECF) on the 3rd day of November, 2009.

By: */s/Adam L. Saper*

6500721v1 906005 72055